# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5267 | **DATE** | 8/22/2002 |
| **CASE TITLE** | LeNoir v. Combined Insurance of America, etal. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion Based Upon The Doctrine Of Administrative Issue Preclusion To Estop Defendants From Asserting That Plaintiff Was Fired For Stealing Scrambling Eggs (#23-1); Defendants' Motion to Strike portions of Plaintiff's Declaration in support of her Motion for Partial Summary Judgment (#35-1); Defendants' Motion to Strike certain paragraphs from Plaintiff's 56.1(a)(3) Statement of Facts, etal. (#34-1); Defendants' Motions to Strike certain responses from Plaintiff's Responses to Defendants' 56.1(b)(3)(B) Statement of Additional Facts (#53-1); Defendants' Motion to Strike Local Rule 56.1 Statement of Undisputed Material Facts (#50-1); Plaintiff's Motion in Limine (#24-1); Plaintiff's Motion for Partial Summary Judgment (#21-1); Defendants' Motion for Summary Judgment (#25-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the attached reasons, Plaintiff's motion for administrative issue preclusion (#23-1) is **DENIED**; Defendants' Motion to Strike portions of Plaintiff's Declaration in support of her Motion for Partial Summary Judgment (#35-1) is **GRANTED**; Defendants' Motions to Strike certain responses (#34-1)(#50-1)(#53-1) are **DENIED**; Plaintiff's Motion in Limine (#24-1) is **DENIED**; Plaintiff's Motion for Partial Summary Judgment (#21-1) is **GRANTED** in part and **DENIED** in part, such that Plaintiff's claim of hostile work environment is dismissed; and Defendants' Motion for Summary Judgment (#25-1) is **GRANTED** in part and **DENIED** in part, such that Plaintiff's claim for disability-based discrimination may go forward. Enter Memorandum Opinion and Order. Joint Pre-trial Order to be submitted in triplicate to chambers on October 8, 2002 at 9:15 a.m.

(11) ☐ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 23 2002 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | | 59 |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| | courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | | mailing deputy initials | |

**DOCKETED**

AUG 2 3 2002

JANNIE LENOIR          )
     Plaintiff,       )
                   )
v.                   )    **No. 01 C 5267**
                   )
**COMBINED INSURANCE**      )    **Judge William J. Hibbler**
**COMPANY OF AMERICA** and    )
**AON, INC.**             )
     Defendants      )

### MEMORANDUM OPINION AND ORDER

The Court has before it Defendants' Motion for Summary Judgment with respect to Plaintiff's Amended Complaint for employment discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12112(a), as well as Plaintiff's Motion for Partial Summary Judgment relating to selected issues of fact and Plaintiff's hostile work environment claim. Defendants have also filed Motions to Strike certain responses from Plaintiff's Response to Defendants' 56.1(b)(3)(B) Statement of Additional Facts, certain responses from Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, and portions of Plaintiff's Declaration filed in support of her Motion for Summary Judgment. In addition, Plaintiff has filed a "Motion Based Upon the Doctrine of Administrative Issue Preclusion to Estop Defendants from Asserting that Plaintiff was Fired for Stealing Scrambled Eggs," and a Motion in Limine to bar

document and witness discovery. Corresponding with the order in which they will be discussed below, resolution of these motions is as follows: Plaintiff's administrative issue preclusion motion is **DENIED**; Defendants' Motion to Strike portions of Plaintiff's Declaration in support of her Motion for Partial Summary Judgment is **GRANTED**; Defendants' Motions to Strike certain responses from Plaintiff's Responses to Defendants' 56.1(b)(3)(B) Statement of Additional Facts and Local Rule 56.1 Statement of Undisputed Material Facts are **DENIED**; Plaintiff's Motion *in Limine* is **DENIED**; Plaintiff's Motion for Partial Summary Judgment is **GRANTED** in part and **DENIED** in part; and Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

## Background

### *I. Work Environment*

Plaintiff Jannie Lenoir ("Lenoir") worked for Defendant Combined Insurance Company of America, a subsidiary of AON Corporation, (jointly, "Combined") from April, 1991, until November 1, 1999. Lenoir suffers from a condition known as sarcoidosis. Sarcoidosis is a systemic disease, which in its assorted incarnations can affect any or all organs. Lenoir's affliction primarily affected her lungs; among her symptoms were shortness of breath, tightening of the chest, coughing fits, headaches, and extreme fatigue. Due to this condition, Lenoir

took several short-term disability leaves of absence. These leaves of absence covered the following time spans: June 13, 1998, through August 10, 1998; November 4, 1998, through December 14, 1998; May 22, 1999, through June 17, 1999; and September 25, 1999, through October 7, 1999.

Jeannet Ducas ("Ducas") was Lenoir's direct supervisor from 1996 to 1999. Lenoir first discussed her condition with Ducas sometime in 1998, and was comfortable with the tenor of these discussions. Mary Beth Dyer ("Dyer") was Lenoir's manager, as well as Ducas' direct supervisor. Dyer also occasionally spoke to Lenoir about her condition, but Lenoir was less comfortable with these discussions. She stated Dyer asked her several questions about the symptoms of her condition and the medication she took to alleviate those symptoms. (Lenoir Dep. at 119.) Lenoir testified to feeling "uncomfortable" with these questions. *Id.*

Lenoir maintains her co-workers were displeased with the affects of her condition. Lenoir testified she was "uncomfortable" when co-workers gave her "strange looks" and held papers in front of their faces while she coughed. (*Id.* at 174-75.) Lenoir did state, however, that no co-worker directly spoke to her about her condition or symptoms. (*Id.* at 119.) Sometime in 1999, Lenoir received an anonymous handwritten note, which said something to the effect of "what do you have," although

Lenoir does not recall the exact wording. She showed this note to Ducas, and they unsuccessfully attempted to identify the author of the note during their approximately ten minute meeting. Lenoir testified she was "upset" at this time. (*Id.* at 154.) Later in 1999, possibly after Lenoir's return from her leave of absence in June, she received another anonymous note, which read, "Stop spreading germs. Quit now or get fired later." Lenoir and Ducas took this note to Dyer, who contacted Nancy Siemers ("Siemers"), Combined's Employee Relations Manager. Ducas then delivered the note to Siemers.

Lenoir maintains Combined's failure to investigate or relieve the concerns caused by these notes created a hostile work environment in violation of the Americans with Disabilities Act. Lenoir has moved for Partial Summary Judgment with regards to the following material facts and/or matters of law: (a) she is disabled within the meaning of the ADA; (b) AON and Combined Insurance Company, jointly, were her "employer" within the meaning of the ADA; and (c) Combined violated the ADA by failing to investigate or remedy her complaints of disability-based harassment. Combined has also moved for Summary Judgment with regards to Lenoir's hostile work environment claim.

## II. Termination

Combined's "Human Resources Policies and Procedures Manual" dated February 1, 1990, provides the Company's Standards of

4

Conduct. (Ex. 1 Attach'd to Defs' L.R. 56.1 Stmt. Undisp'd Mat. Facts.) The "Purpose" section of this document states: "Certain standards of conduct based on generally accepted behavior and common sense have been established to assure a safe, productive and comfortable work atmosphere for all employees." *Id.* The policy cautions violations of these standards of conduct "may result in various degrees of corrective disciplinary action or termination," depending on the seriousness and circumstances of each incident. *Id.* However, the policy then warns, "there are certain serious major offenses which require immediate probation or termination." The policy provided the following non-exhaustive list of examples:

(a) Refusal to carry out job responsibilities or instructions.
(b) Fraudulent statements or actions involving Company records or business activities; this includes time sheets, expense reports, and other business records.
(c) Absence from work for two consecutive scheduled workdays without notifying the Company.
(d) Misappropriation or theft of Company or co-worker's property or funds.
(e) Possession of a weapon on Company premises.
(f) Reporting to work under the influence of drugs or alcohol which impairs judgment, performance or behavior while on company premises or while on company business.
(g) Possession, use, or sale of illegal drugs on Company premises.
(h) Disorderly conduct including the use of profane or abusive language.
(i) Unauthorized solicitation during working time or distribution in work areas.
(j) Physical or verbal intimidation or violence including racial or sexual harassment.
(k) Gambling on company premises or during working hours.

(1) Any other breach of appropriate business standards and conduct.

*Id.*

On November 1, 1999, the Assistant Manager of Combined's cafeteria, Ildefonso Jimenez ("Jimenez"), signed a written statement which was provided to Combined's Human Resources Department. The statement described the following incident: on the morning of November 1, Jimenez observed a female employee depositing two scoops of scrambled eggs into a large cup. She then placed a lid on the cup, took two other cups, and proceeded to the cashier. When questioned, the cashier confirmed the woman only paid for three cups. Jimenez later identified Lenoir as the female employee in question.[1] The price for two scoops of scrambled eggs was $0.45. According to Lenoir, the price she paid for the cups was $0.25.

Siemers learned of this incident on November 1, and provided Jimenez's statement and identification of Lenoir to Nancy Gross ("Gross"), Combined's Director of Human Resources. Gross, Combined explains, is responsible for interpreting the above Standards of Conduct and determining when an infraction warrants termination. Combined contends Gross has "consistently applied this policy and terminated every employee whom she was aware was

---

[1] Lenoir does not dispute the accuracy of Jimenez's identification. That is, she does not contend he saw someone else pay for three cups on the morning of November 1, 1999; rather, she contends she did not place eggs in the large cup in the first place.

6

involved in theft" during her eleven year tenure as Director of Human Resources.

Combined maintains Gross reviewed Jimenez's statement, verified Jimenez's identification of Lenoir, then, after a discussion with Combined's attorney, decided to terminate Lenoir for theft. Combined states Gross then instructed Siemers to call Richard North ("North"), the manager of Lenoir's department, and terminate Lenoir. Combined maintains Gross was the sole-decision maker; Lenoir disputes this characterization.

North and Siemers met with Lenoir on November 2, 1999, and informed her of her termination. Lenoir insists she did not remove the scrambled eggs from the cafeteria. Rather, she maintains, she followed her normal morning practice: she purchased three cups for ice, cream, and sugar, which she presumably used with her morning coffee. She maintains she was not given an opportunity to respond to the theft allegations; further, she offered to show North and Siemers the cups on her desk in an effort to exculpate herself, but was refused.

Lenoir challenges the rigor with which the Standards of Conduct have been applied in recent years. Lenoir offers several examples of conduct violations which have not resulted in termination; some of these violations have involved the removal of food from the cafeteria without payment, while other examples include: use of gross profanity, physical intimidation of co-

workers, insubordination, and operation of a secondary personal business during business hours. Lenoir argues these examples and the nominal price of the allegedly stolen scrambled eggs provide evidence her termination for theft was mere pretext; she alleges she was instead terminated on the basis of her disability.

Combined has moved for summary judgment, alleging Lenoir has not shown as a matter of law she was terminated in violation of the ADA. Combined maintains Gross was the sole decision-maker in this incident, and had no knowledge of Lenoir's disability. Further, Combined argues the requirements of its Standards of Conduct, and Gross' uniform enforcement thereof, shows Lenoir's termination was genuinely due to the alleged theft. Because Combined has not as a matter of law successfully rebutted Lenoir's pretext argument, and because a genuine issue of fact remains with regards to the application of Combined's Standards of Conduct and Gross' role in the termination decision, Lenoir survives this summary judgment motion.

## Preliminary Analysis

The parties have filed a number of administrative motions in addition to their respective motions for summary judgment. Resolution of these motions will precede discussion of the hostile work environment and disability-based termination claims underlying the parties' respective motions for summary judgment.

### I. Issue Preclusion

Lenoir filed a motion seeking an order to preclude Combined from asserting she was terminated for stealing eggs from the cafeteria. Lenoir argues this issue was fully and finally litigated in a January 14, 2000 hearing before the Illinois Department of Employment Security (IDES); therefore, issue preclusion bars further litigation of this assertion.[2]

Lenoir's motion is defective in several respects. First, this motion is a transparent attempt to include an additional argument in favor of Lenoir's Response to Combined's Motion for Summary Judgment. This motion asserts issue preclusion in an attempt to defeat Combined's Motion for Summary Judgment. IDES concluded Lenoir was not terminated for misconduct; therefore, she argues, Combined may not advance this argument before this Court. However, Local Rule 7.1 strictly confines all memoranda submitted to the Court to fifteen pages, and Lenoir's Response to Combined's Motion for Summary Judgment totaled fifteen pages, allowing her no space to advance her issue preclusion argument. This motion simply attempts to circumvent the local rule, and is not valid.

Even if the Court were to consider this motion, it could not agree with its substance. Although Lenoir notes Siemers'

---

[2] After her termination from Combined, Lenoir applied for unemployment benefits under Illinois' Unemployment Insurance Act. If, after hearing, the Illinois Department of Employment Security determines the employee was terminated for misconduct, such employee is ineligible for full Illinois unemployment benefits.

participation in the IDES hearing on behalf of Combined, and IDES' conclusion could provide evidence in support of Lenoir's claim, the findings of this state administrative agency lack preclusive effect in federal courts. The Supreme Court has held while preclusive effect in Title VII claims may be given to the judgments and records of state courts pursuant to 28 U.S.C. § 1738, this statutory provision does not extend to the unreviewed findings of fact by state administrative agencies. *University of Tennessee v. Elliott,* 478 U.S. 788, 792, 92 L. Ed. 2nd 635, 106 S. Ct. 3220 (1986). The Court explained a Title VII provision directing the EEOC to give "substantial weight" to the findings of such entities indicated Congress did not intend for these findings to have preclusive effect. *Id.* at 795. The Seventh Circuit applied the *Elliott* holding to ADA claims, noting because "Title I of the ADA incorporates the same deferral procedures . . . *Elliott's* reasoning applies equally to ADA cases." *Pernice v. City of Chicago*, 237 F.3d 783, 787 n.5 (7th Cir. 2001); *Thomas v. Contoocook Valley Sch. Dist.,* 150 F.3d 31, 39 & n.5 (1st Cir. 1998). In addition, the burdens and incentives to vigorously litigate the termination issue differ between the setting of a state agency's unemployment hearing and the judicial proceeding, and issue preclusion is therefore inappropriate in this case. Accordingly, Lenoir's Motion Based Upon the Doctrine of Administrative Issue Preclusion to Estop Defendants From

Asserting that Plaintiff was Fired for Stealing Scrambled Eggs is **DENIED.**

## II. *Combined's Motion to Strike Portions of Lenoir's Declaration*

Combined has moved to strike portions of a sworn declaration submitted by Lenoir in support of her Motion for Partial Summary Judgment. A trial court has discretion to strike parts of an affidavit in opposition to a motion for summary judgment. *See Adusumilli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir. 1998). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." Fed. R. Civ. P. 56(e). A party cannot support a motion for summary judgment with affidavits containing "conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony." *Adusumilli*, 164 F.3d at 360 (quoting *Diliberti v. United States,* 817 F.2nd 1259, 1263 (7th Cir. 1987)). Therefore, deposition testimony controls when a conflict arises between a sworn affidavit and that testimony, unless there is a demonstrably reasonable mistake in the deposition. *Piscione v. Ernst & Young, L.L.P.,* 171 F.3d 527, 532-533 (7th Cir. 1999); *Russell v. Acme-Evans Co.,* 51 F.3d 64, 67-68 (7th Cir. 1995). Further, "self-serving affidavits without factual support in the

record will not defeat a motion for summary judgment." *Piscione*, 171 F.3d at 532.

Lenoir's challenged Declaration statements conflict with her deposition testimony and/or are self-serving attempts to "fill the gaps" left by her deposition testimony in the construction of a hostile work environment claim. In her Declaration, Lenoir states she "complained constantly" to Ducas. (Pl. Decl. ¶ 10.) In her deposition, she described only four conversations with Ducas regarding her concerns, and specifically admitted she did not discuss with Ducas any looks or comments she received from her co-workers. (Lenoir Dep. at 151, 156, 162-163, 170-172, 175-176). Lenoir also re-characterized the looks she received, describing them in her Declaration as "angry" and "hateful," as opposed to the deposition description of "strange." (Pl. Decl. ¶ 7; Lenoir Dep. at 175.) Also at odds with the tenor of her deposition are the assertions she suffered "constant" harassment (Pl. Decl. ¶¶ 7, 12), that she "put up with [the 'almost intolerable atmosphere'], hoping that [her] supervisors would listen to [her] complaints and put a stop to the harassment." (Pl. Decl. ¶ 8). In contrast, her deposition testimony only indicates she received strange looks upon returning from leaves and detectable reactions when she coughed. (Lenoir Dep. at 174-175.) She further stated in her deposition she did not suffer any harassment other than the anonymous notes, nor did she report

any of her co-workers' comments or looks to her supervisors. (Lenoir Dep. at 118-120, 175-176.) Lenoir's further stated in her Declaration she hoped her "supervisor**s**" (emphasis added) would listen to her concerns and stop the harassment (P. Decl. ¶ 8), and the constant harassment made it almost impossible to perform her job. (Pl. Decl. ¶¶ 7, 12.) These statements conflict with her deposition testimony, in which she acknowledged she spoke only with Ducas (Lenoir Dep. at 172, 175-76), and did not say the negative treatment she received made the performance of her job significantly more difficult. (Lenoir Dep. at 111-112, 176.) The offending statements are inconsistent with her deposition testimony, and appear to be self-serving attempts to augment her hostile work environment claims. Accordingly, Combined's Motion to Strike these portions of her Declaration is **GRANTED**.

*III. Combined's Motions to Strike Other Statements and Responses*

Combined has filed three additional Motions to Strike: (1) Motion to Strike Certain Paragraphs from Plaintiff's 56.1(a)(3) Statement of Facts, Portions of Plaintiff's Appendix, and Unsupported References in Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment; (2) Motion to Strike Certain Responses from Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts; and (3) Motion to Strike Certain Responses from

Plaintiff's Response to Defendants' 56.1(b)(3)(B) Statement of Additional Facts.

The Seventh Circuit has stated repeatedly, "[a] local rule of a federal district court is written by and for district judges to deal with special problems of their court, and we are disposed therefore to give a district judge's interpretation of his [or her] court's local rules . . . considerable weight." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995) (quoting *Bell, Boyd & Lloyd v. Tapy*, 896 F.2nd 1101 (7th Cir. 1990)) (citations omitted). Whether to apply a given local rule strictly or to overlook any transgression, therefore, is a matter the Seventh Circuit has left to the district court's discretion. *See Waldridge v. American Hoeschst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994); *McGann v. Northeast Ill. Regional Commuter R.R. Corp.*, 8 F.3d 1174, 1178 n.3 (7th Cir. 1993); *Schultz v. Serfilco, Ltd.*, 965 F.2nd 516, 519 (7th Cir. 1992).

While strict adherence to the local rules could justify striking the offending portions of Lenoir's Statement of Facts, Appendix, Memorandum of Law, and Response, the Court instead chooses to exercise its recognized discretion in overlooking these technical transgressions. Motions to strike are generally disfavored and judicial economy is not necessarily served by striking the offending portions. Accordingly, Combined's Motions to Strike the aforementioned portions of Lenoir's Statement of

Facts, Appendix, Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, and Plaintiff's Responses to Defendants' Local Rule 56.1 Statement of Material Facts and Defendants' 56.1(b)(3)(B) Statement of Additional Facts are **DENIED**.

### IV. Lenoir's Motion in Limine

Lenoir has filed a Motion in Limine, seeking an order barring Combined from using or making reference to documents disclosed by Combined after the close of discovery, or calling Robert DiNicola as a witness at trial. On September 10, 2001, Lenoir filed Interrogatories and Requests for Production of Document. Request for Production #3 called for

> All personnel policies, employee handbooks, or other policies or procedures regarding the terms or conditions of employment for persons employed by Combined Insurance during the time period plaintiff was employed, including but not limited to all medical leave policies, FMLA policies, disability policies, grievance procedures, anti-harassment policies, and discipline or termination of employment policies.

(Ex. B att'd to Pl. Mot. in Limine.) In response to the requests, Combined produced its Personnel Policy Manuals, including the Standards of Conduct, and other relevant materials. During the deposition of Dyer on February 28, 2002, Dyer identified Robert DiNicola as the individual who conducted Combined's in-house harassment and discrimination training. Combined claims this information first came to its attention at

that time, and Combined's counsel immediately contacted the company to obtain further information and documents from DiNicola. The close of Dyer's deposition coincided with the close of discovery; Combined's counsel sent Lenoir's counsel correspondence identifying DiNicola as an individual with knowledge potentially relevant to the lawsuit. On March 4, 2002, Combined's counsel reviewed DiNicola's complete files, including his employment and training materials pertaining to the ADA, harassment, discrimination, and course rosters identifying the Combined employees present at the training sessions. On the same day, Combined's counsel copied these documents and sent them to Lenoir's counsel.

Lenoir moves to bar usage of or reference to these documents and the use of DiNicola as a witness by Combined. Because of the withholding of the materials until after the close of discovery, Lenoir protests, she was unable to question any defense witnesses about the training sessions or DiNicola's training materials. Lenoir further claims disclosure of DiNicola's identity and knowledge so close to the end of discovery prevented her from conducting discovery into his potential witness testimony. Combined contends this information was not abusively withheld, but made available to Lenoir as soon as it was brought to defense counsel's attention. Combined's counsel made inquiries and obtained additional information in light of Dyer's deposition

testimony, and indicated his acquiescence should Lenoir move for leave of court to extend discovery. Lenoir's counsel rejected this offer.

The documents and witness at issue were disclosed to Lenoir in an untimely manner. However, Lenoir fails to demonstrate how, if at all, she will suffer prejudice resulting from the usage or reference to these documents or the testimony of DiNicola. In addition, Combined seasonably supplemented its disclosures. Because of the absence of prejudice and the relatively insignificant delay in disclosure, an order barring the use or reference to these documents or the use of this witness testimony is not warranted. *See Heidelberger Druckmaschinen AG v. Ohio Elec. Engravers, Inc.,* No. 98 C 7946, 2000 U.S. Dist. LEXIS 8142, at *4 (N.D. Ill. June 8, 2000). Accordingly, Lenoir's Motion in Limine to Bar Documents and Witnesses Disclosed after the Close of Discovery is **DENIED**.

### Analysis

#### Standard of Review

Summary Judgment is appropriate if, after drawing all reasonable inferences in favor of the nonmoving party, the court concludes there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 320 (7th Cir. 1992). Federal Rule of Civil

Procedure 56(d) permits partial summary judgment when judgment is not rendered upon the whole case. Fed.R.Civ.P. 56(d). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether any genuine issue of fact exists, the Court must assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed.R.Civ.P. 56(c). The Court will draw all reasonable inferences in favor of the nonmoving party; however, the Court is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). Furthermore, summary judgment standards are applied with a higher degree of scrutiny in employment discrimination suits, in which intent and credibility are crucial issues. *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999).

## I. Partial Summary Judgment

Lenoir has moved for Partial Summary Judgment with regard to the following material facts and/or matters of law: (1) Lenoir is "disabled," by virtue of her sarcoidosis condition, within the meaning of the Americans with Disabilities Act; (2) Combined Insurance Company of America and AON Corporation, jointly, were Lenoir's "employer" within the meaning of the ADA; and (3)

Combined violated the ADA by "failing to investigate [Lenoir's] complaints of co-worker harassment based upon her disability and by failing to take any action to stop or remedy the harassment." (Pl. Mot. for Partial Summ. J. ¶ 3.)

Combined does not contest that Lenoir is "disabled" as defined by the ADA. (Combined Mem. Resp. to Mot. for Partial Summ. J. n.1.) Nor does Combined contest Lenoir's characterization of Combined Insurance Company of America and AON Corporation, jointly, as a single employer. *Id.* Therefore, there is no dispute with regards to the material facts asserted in grounds I and II of Lenoir's Motion for Partial Summary Judgment, and Summary Judgment is **GRANTED** with respect to these elements of Lenoir's claim.

## II. Hostile Work Environment

Both parties have moved for summary judgment with respect to Lenoir's hostile work environment claim. The ADA prohibits an employer from discriminating against a qualified individual with a disability because of the disability of such person. 42 U.S.C. § 12101. The Seventh Circuit has not explicitly recognized hostile work environment claims as viable under the ADA; however, this Court will assume, without deciding, the viability of such claims.[3] Hostile work environment claims are cognizable under

---

[3] In *Silk v. City of Chicago,* 194 F.3d at 803-04, the Seventh Circuit noted and adhered to a past practice of assuming such claims "would seem to arise under the general prohibition against discrimination with respect to terms and conditions of employment contained in [42 U.S.C.] § 12112(a) and in 29 C.F.R. § 1630.4 . . . ." (quoting *Miranda v. Wisconsin Power & Light Co.,* 91 F.3d

Title VII, and cases interpreting such claims will be presumed analogous for the present determination. *See Silk,* 194 F.3d at 804. A hostile work environment is one in which the alleged harassment is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Silk,* 194 F.3d at 804 (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 786 (1998) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986))). To determine whether the environment is legally "hostile" or "abusive", the Court considers a variety of factors within the totality of circumstances, including: "the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 24 (1993). Furthermore, the Court must determine the work environment to be both subjectively and objectively hostile, i.e. the Court must consider both the actual effect of the harasser's conduct on the victim and the effect such conduct would have had on a reasonable person in the victim's position. *Id.; Saxton v. AT&T Co.,* 10 F.3d 526, 534 (7th Cir. 1993).

Lenoir fails to show she perceived this conduct to be severely and pervasively hostile. As stated, the Court will not

1011, 1017 (7th Cir. 1996)). The Court makes the same assumption in the present case.

consider those portions of her Declaration stricken above, and her deposition testimony does not indicate she subjectively perceived the conduct of her co-workers to be abusive or hostile. While she doubtlessly did not appreciate the "strange" looks or unnecessary guarded gestures to which she was subject, she stated this conduct only made her feel uncomfortable. Further, although she was upset with the anonymous notes she received, she did not provide testimony indicating a resulting interference with her ability to perform her job. She could not recall the wording of any note other than that which was saved and attached in her Exhibits, and admitted that no co-worker ever verbally or physically confronted or intimidated her. While she was upset with the conditions she faced, and it is difficult to discern her subjective feelings about the conduct of her co-workers, Lenoir has not shown she considered this conduct to have risen to the "severe and pervasive" nature necessary to support a hostile work environment claim.

More clearly, the environment within which Lenoir worked was not that which a reasonable person would find hostile or abusive. The offensive conduct about which Lenoir complains is notable both for its infrequency and its lack of severity. Immature work environments in which co-workers show little sympathy for a difficult medical condition are not those of which employers should be proud. However, the Supreme Court has warned, "'simple

teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Adusumilli,* 164 F.3d at 361 (quoting *Faragher,* 118 S. Ct. at 2283) (citations omitted). Sensitive people would not likely hold papers in front of their mouths when a co-worker begins coughing; however, even if assumed to carry an unambiguous meaning, such conduct does not support a clear inference of hostility. Several forms of conduct to which Lenoir refers, such as "strange" looks and co-worker comments, are ambiguous and occurred infrequently, e.g. upon Lenoir's returns from leaves of absence. The anonymous "you have germs" note represents the least appropriate of a highly infrequent set of occurrences, which are not serious enough to present the "severe and pervasive" environment where a reasonable person would find abusive and hostile. Accordingly, Lenoir's Motion for Partial Summary Judgment with respect to her hostile work environment claim is **DENIED,** Combined's Motion for Summary Judgment with respect to Lenoir's hostile work environment claim is **GRANTED,** and Lenoir's hostile work environment claim is dismissed.

### III. *Disability-based termination*

Combined has also moved for summary judgment with respect to Lenoir's claim for disability-based termination. In order to defeat a defendant's motion for summary judgment, a plaintiff

must establish the following three elements: (1) she is a person with a disability within the meaning of the ADA; (2) she is qualified to perform the essential functions of her job either with or without reasonable accommodations; and (3) she was subject to an adverse employment action because of her disability. *Bekker v. Humana Health Plan, Inc.,* 229 F.3d 662, 670 (7th Cir. 2000); *Cleveland v. Prairie State College,* No. 99 C 6339, 2002 U.S. Dist. LEXIS, at *30 (N.D. Ill. Jul. 12, 2002). Combined does not dispute Lenoir's disability, and Combined has not asserted Lenoir could not perform the essential functions of her job with a reasonable accommodation.

An aggrieved employee may allege a disability-based adverse employment action through direct evidence of discriminatory animus on the part of her employer, or may use the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to set forth indirect proof that her employer intentionally discriminated against her. *Cleveland,* 2002 U.S. Dist. LEXIS, at *30, *31. Lenoir's argument more closely follows the *McDonnell Douglas* burden-shifting approach. Under this method, a plaintiff "first must establish a prima facie case of discrimination by her employer, which creates a presumption of intentional discrimination." *Bekker,* 229 F.3d at 672. To do so, the plaintiff must show she is a member of a protected class, she suffered an adverse employment action, she was meeting her

employer's legitimate performance expectations, and the employer treated similarly situated non-disabled employees more favorably. *Stalter v. Wal-Mart Stores, Inc.,* 195 F.3d 285, 288 (7th Cir. 1999). A plaintiff must only show there is a genuine issue of material fact regarding these factors. *Id.* Lenoir has done so here. Combined admits she is disabled, she was terminated, there is no evidence she could not perform the essential functions of her job with a reasonable accommodation, and Lenoir has provided some evidence showing non-disabled employees were not terminated for violating specified provisions of Combined's Standards of Conduct.

The burden then shifts to the employer; Combined must provide evidence of a nondiscriminatory reason for firing Lenoir. *Dvorak v. Mostardi Platt Assocs., Inc.,* 289 F.3d 479, 485 (7th Cir. 2002) (citations omitted). Combined satisfies this burden by providing evidence Lenoir was fired for stealing eggs from the cafeteria. As such, the burden shifts back to Lenoir, who must prove by a preponderance of the evidence that Combined's proffered reason was a pretext for intentional discrimination. *Id.*

Lenoir has demonstrated a genuine issue of material fact as to whether Combined's stated nondiscriminatory reason for its employment decision, i.e. Combined terminated Lenoir for allegedly stealing 45¢ worth of eggs, was in fact pretextual.

*Anderson*, 477 U.S. at 248. In assessing the employer's decision to terminate, the Court looks not to the wisdom of the decision, but rather at the genuineness of the motive. *Stalter,* 195 F.3d at 289. Lenoir maintains Combined made little or no effort to allow her to exculpate herself. She offered to show North and Siemers the cups she had taken from the cafeteria, which she says were still on her desk. North and Siemers declined to inspect these cups, which might well have provided proof they contained sugar, ice, or cream, and not remnants of scrambled eggs. This alone may or may not be enough to impugn the genuineness of Combined's motive. However, a common sense analysis of the severity of the theft accusation in light of *Stalter* strengthens the inference of pretext. In *Stalter*, the Seventh Circuit considered the termination of an African-American Wal-Mart employee accused of taking a handful of taco chips from a co-worker's bag in the company break room. *Id.* at 287. Although Wal-Mart argued other employees had been terminated for violating its code of conduct, the Seventh Circuit described the termination as "swatting a fly with a sledge hammer." *Id.* at 290. Although Combined felt its Standards of Conduct compelled Lenoir's termination for this theft, and Wal-Mart's policy was stated in more permissive terms than Combined's ("There are, however, certain actions of misconduct which **may** result in immediate termination . . .") (emphasis added), this decision

still fails to pass what the Seventh Circuit called the "straight-face" test. *Id.* at 290, 291. Lenoir has provided evidence that other employees who violated the purportedly mandatory termination provision of the Standards of Conduct were not immediately terminated. These examples include employees arriving at work in intoxicated states, using gross profanity and displaying egregious insubordination towards supervisors. Such evidence creates a key issue of fact as to the application of Combined's policy. If Combined could show each and every employee who engaged in acts of theft, from the employee caught taking a nickel from a co-worker's desk to the employee discovered in an embezzlement scheme, was in fact immediately terminated, then its contention might seem more credible. Combined's Standards of Conduct, the document states, are based on "generally accepted behavior and common sense" and such common sense is helpful here: termination for the theft of a $0.45 serving of eggs was neither incumbent upon Combined nor legitimate under the ADA.

Combined argues Gross was the sole decision-maker with regards to Lenoir's termination, and protests she did not have knowledge of Lenoir's disability at the time of her firing. This contention is not sufficient to support summary judgment, however. Combined fails to provide evidentiary support for this assertion, and as Lenoir points out, the only signatures on the

"Management Approval" termination of employment form are those of North and Dyer. Further, the only signature on the "Human Resources Approval" form is that of Siemers. No such form has been provided indicating the sole decision was that of Gross'. Furthermore, if Combined's characterization of its hierarchy is correct, it is somewhat troubling. If employers could simply isolate termination decisions to only those members of management with no knowledge of employees' protected statuses, they could then immunize themselves from the strictures of employment discrimination statutes. The Court declines Combined's invitation to make possible this end-run around Title VII and the ADA, and as such **DENIES** Combined's Motion for Summary Judgment with respect to Lenoir's claim for disability-based termination.

### Conclusion

For the reasons set forth above, Plaintiff's motion for administrative issue preclusion is **DENIED;** Defendants' Motion to Strike portions of Plaintiff's Declaration in support of her Motion for Partial Summary Judgment is **GRANTED;** Defendants' Motions to Strike certain responses from Plaintiff's Responses to Defendants' 56.1(b)(3)(B) Statement of Additional Facts and Local Rule 56.1 Statement of Undisputed Material Facts are **DENIED;** Plaintiff's Motion in Limine is **DENIED;** Plaintiff's Motion for Partial Summary Judgment is **GRANTED** in part and **DENIED** in part, so that Plaintiff's claim of hostile work environment is

dismissed; and Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part, so that Plaintiff's claim for disability-based discrimination may go forward.

**IT IS SO ORDERED.**

**Dated:** August 21, 2002

_Wm. J. Hibbler_

**WILLIAM J. HIBBLER, DISTRICT JUDGE**